IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 20-43555 |
| Ben F. Blanton Construction, Inc. | ) |
| | ) Chapter 11 |
| | ) |
| Debtor. | ) Hearing Date: July 22, 2020 |
| | ) Hearing Time: 2:00 p.m. |
| | ) Hearing Location: Courtroom 7 South |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING CONTINUED USE OF THE DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM; (B) AUTHORIZING USE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS; AND (C) GRANTING RELATED RELIEF**

Ben F. Blanton Construction, Inc., debtor and debtor in possession in the above-captioned cases ("Debtor") respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1. By this Motion, the Debtor seeks entry of interim and final orders (the "Proposed Orders"), pursuant to sections 105(a), 345(b), 363, and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing and approving the Debtor to continue using its existing cash management system (the "Cash Management System"); (b) authorizing the Debtor to continue using their existing bank accounts at Enterprise Bank & Trust (collectively, the "Bank Accounts") and existing checks; and (c) granting related relief.

**Jurisdiction and Venue**

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

32923654v.1

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 345(b), and 503(b)(1) of the Bankruptcy Code and Bankruptcy Rules 6003.

## Background

4. On July 16, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, codified as new 11 U.S.C. §§ 1181-1195.

5. The Debtor is a 47 year old construction management, design/build, and general contracting company with headquarters in the greater metropolitan St. Louis, MO area. The company began operations in 1970 as a residential builder and then moved into commercial construction. The Debtor has completed a great number of both chain and independently owned fast food and family dining restaurants, gas & convenience stores and a wide variety of retail stores. After two decades of successful commercial building the Debtor sought additional types of building to satisfy the need for diversity within the building profession. The Debtor currently provides a wide range of services which includes, pre-construction, general contracting, construction management, along with design/build and build to suit construction for industrial, commercial, retail, education/ institutional, senior care and federal/state markets, and had nearly $30,000,000 in revenue during its last fiscal year.

6. The Debtor continues to manage and operate its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

7. Information regarding the Debtor's business, its debt structure, the events leading to the filing of this case, is set forth in the Declaration of Jeff Blanton, President of Ben F. Blanton Construction, Inc. (the "Declaration") and the statements contained in such Declaration in support of this Motion are incorporated by reference herein.

32923654v.1

## The Debtors' Cash Management System

**A.  Overview**

8.  In connection with its operations, the Debtor maintains an integrated Cash Management System in the ordinary course of business that allows them to efficiently administer its cash and financial affairs. Any disruption to the Cash Management System would have an immediate adverse impact on and cause irreparable harm to the Debtor's businesses. Accordingly, to minimize the disruption caused by these chapter 11 cases and maximize the value of the Debtor's estate, the Debtor requests authority to continue to utilize their existing Cash Management System during the pendency of these chapter 11 cases. In connection with this relief, the Debtor also respectfully requests a waiver of certain of the United States Trustee's Chapter 11 Guidelines for Debtors-In-Possession (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for Region 13 (the "U.S. Trustee") that require the Debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and obtain new checks bearing a "debtor-in possession" legend.

**B.  Description of Bank Accounts**

9.  The Debtor collects and concentrate the funds generated by the Debtor's operations from their customers and use such collected amounts to service the Debtor's debt obligations and to fund disbursements to their vendors, suppliers, employees, and other creditors. The Debtor's Cash Management system includes consists of two (2) Bank Accounts maintained at Enterprise Bank & Trust ("Bank"). A general description of the Bank Accounts, transfers between such accounts, and their purpose in the Cash Management System is set forth as follows:

32923654v.1

   a. Enterprise Bank & Trust Operating Checking Acct - xxxxx5217
   b. Enterprise Bank & Trust Payroll - xxxxx5225

The operating account operates with a cash sweep feature such that Bank sweeps cash from the operating account to pay down the line of credit and then advances are made to the operating account as requested by Debtor in accordance with the terms of the credit facility with Enterprise Bank & Trust which will be subject to the DIP Financing Motion. Funds are transferred from the operating account for the purpose of funding the Debtor's weekly payroll obligations.

10. The Debtor believes that the Cash Management System is similar to those employed by businesses comparable to the Debtor in the construction industry. Indeed, many businesses use such systems to help control funds, ensure cash availability, and reduce administrative expenses by facilitating the movement of funds. The Cash Management System is vital to the Debtor's ability to conduct its daily operations, including receiving revenue and paying their vendors, employees, and stakeholders. Any disruption of the Cash Management System would accordingly be materially detrimental to the Debtor's operations.

### C. Compliance of the Bank Accounts with Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines

11. The Bank Accounts are maintained at a Bank that is insured by the Federal Deposit Insurance Corporation (the "FDIC"), and such Bank is approved by Region 13 of the US Trustee. As such, the Bank Account complies with section 345(b) of the Bankruptcy Code. The Debtor respectfully requests that the Court authorize Enterprise Bank & Trust to continue to maintain, service, and administer the applicable Bank Accounts as accounts of the Debtor as debtors in possession, without interruption and in the ordinary course of business.

4

32923654v.1

### D. Bank Fees

12. In the ordinary course of business, the Bank charges, and the Debtor pays, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees"). To maintain the integrity of their Cash Management System, the Debtors request authority to pay prepetition Bank Fees, in addition to any other Bank Fees for prepetition transactions that are charged postpetition, and to continue to pay the Bank Fees in the ordinary course of business.

### E. Business Forms

13. As part of its Cash Management System, the Debtor utilizes numerous preprinted correspondence and business forms, including letterhead, purchase orders, invoices, and preprinted checks (collectively, the "Business Forms") in the ordinary course of its business. To minimize expenses to its estate and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of this chapter 11 case, the Debtor requests that the Court authorize the continued use of all existing Business Forms as such forms were in existence immediately before the Petition Date—without reference to the Debtor's status as a chapter 11 debtors in possession—rather than requiring the Debtor to incur the expense and delay of ordering new Business Forms and creating new books and records; *provided* that once the existing Business Forms have been used, the Debtors shall, during the pendency of these chapter 11 cases, reorder new Business Forms that include a stamp to reference the Debtor's status as debtors in possession and the corresponding bankruptcy case number.

32923654v.1

## Basis for Relief Requested

### A.   The Court Should Authorize the Debtors' Continued Use of the Cash Management System, as it is Essential to the Debtors' Operations and Restructuring Efforts

14.   The Cash Management System constitutes an ordinary course and essential business practice of the Debtor, and is consistent with those utilized by corporate enterprises comparable to the Debtor. The Cash Management System provides significant benefits to the Debtor including, among other things, the ability to control corporate funds, to ensure the availability of funds when necessary, and to reduce costs and administrative expenses by facilitating the movement of funds and developing timely and accurate account balance information. Thus, to ensure the seamless operation of the Debtor's business and to realize the benefits of the Cash Management System, the Debtor should be allowed to continue using the Cash Management System, including the payment of Bank Fees and should not be required to open new bank accounts.

15.   Any disruption to the Debtor's current cash management procedures would impair the Debtor's ability to successfully administer these chapter 11 cases. It would be time consuming, difficult, and costly for the Debtor to establish an entirely new system of accounts and a new cash management system. The attendant delays from revising cash management procedures and redirecting receipts would create unnecessary pressure on the Debtor and its employees while they work to meet the other administrative obligations imposed by chapter 11. The Debtor will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtor before the Petition Date. As a result, the Debtor will be able to document and record the transactions occurring within the Cash Management System for the benefit of all parties in interest.

32923654v.1

16.     Allowing the Debtor to utilize its existing Cash Management System is entirely consistent with applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). This section provides a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Habinger, Inc.* v. *Metro. Cosmetic & Reconstructive Surgical Clinic, P.A.*, 124 B.R. 784, 786 (Bankr. D. Minn. 1990) (citing *United States ex rel. Harrison* v. *Estate of Deutscher*, 115 B.R. 592 (Bankr. M.D. Tenn. 1990)). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of funds pursuant to the Cash Management System described above.

17.     The Court may also exercise its equitable powers to grant the relief requested herein. Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See, e.g.*, *In re Carlson*, 126 F.3d 915, 920 (7th Cir. 1997) ("Section 105(a) gives the bankruptcy court the authority to issue any order necessary to carry out the provisions of the Bankruptcy Code."); *In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re NWFX, Inc.*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . . ."); *Steinberg* v. *Esposito*, 33 B.R. 812, 813 (Bankr. N.D. Ill. 1983) (The "bankruptcy court is

7

vested with great latitude to protect the assets of the debtor's estate, including the use of equitable remedies . . . .").

18. Continuing the Cash Management System without interruption is vital to the Debtor. In particular, an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994). The Cash Management System is the mechanism whereby the Debtor is able to transfer its revenue toward the payment of its obligations and without which the Debtor's operations would be disrupted. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

19. Courts in this and other districts have routinely granted relief similar to the relief requested herein in other chapter 11 cases, authorizing debtors to utilize cash management systems employed by comparable corporate enterprises. *See, e.g., In re Payless Holdings LLC*, No. 19-40883-659 (Bankr. E.D. Mo. Apr. 13, 2019) (D.I. 783) (granting motion to continue using cash management system on a final basis); *In re Armstrong Energy, Inc.*, No. 17-47541659 (Bankr. E.D. Mo. Nov. 2, 2017) (D.I. 88) (same); *In re Noranda Aluminum, Inc.*, No. 1610083-399 (Bankr. E.D. Mo. Feb. 9, 2016) (D.I. 79) (granting motion to continue using cash management system on an interim basis); *In re Arch Coal Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 13, 2016) (D.I. 56) (same); *see also In re Murray Energy Holdings Co.*, No. 19-56885 (JEH) (Bankr. S.D. Ohio Dec. 10, 2019) (D.I. 389) (same). The Debtor submits that the circumstances of this chapter 11 case warrants granting similar relief, and that doing so is in the

best interests of the Debtor, its estate, its creditors, and its stakeholders, and therefore should be granted.

### B. Maintaining Existing Bank Accounts and Checks and Providing Protections to Existing Banks Is Warranted and Appropriate under the Circumstances

20. The U.S. Trustee Guidelines require that chapter 11 debtors, among other things: (a) close all existing bank accounts upon filing their petitions and open new "debtor-in-possession" accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes; and (c) maintain a separate debtor-in-possession account for cash collateral. By this Motion, the Debtor seeks a waiver of the U.S. Trustee Guidelines' requirement that their Bank Accounts be closed and that new postpetition bank accounts be opened.

21. The Debtor can achieve the goals of the U.S. Trustee Guidelines without closing its existing Bank Accounts and opening new ones. The Debtor can and will identify all prepetition checks and other forms of payment outstanding on the Petition Date and notify the Bank not to pay such checks or obligations without proper authorization. The systems currently employed by the Debtor and the Bank are sufficient to ensure that prepetition obligations are not paid improperly. However, to avoid delays in payments to administrative creditors, to ensure a transition into chapter 11 with minimal disruption, and to aid in the Debtor's effort to preserve and maximize the value of its assets, it is important that the Debtor be permitted to continue to maintain the Bank Accounts with the same account numbers following the Petition Date.

22. By preserving business continuity and avoiding disruption and delay to the collection of the Debtor's receipts and making of disbursements that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including

32923654v.1

employees, vendors, and customers, will be best served. The confusion that would result absent the relief requested herein would ill serve the Debtor's chapter 11 effort.

23.  The Debtor also seeks an order granting the Bank authority to continue to treat, service, and administer the Bank Accounts as accounts of the Debtor as a debtor-in-possession without interruption and in the usual and ordinary course, and to (i) receive, process, and honor and pay any and all postpetition checks, drafts, wires, or electronic funds transfers drawn on the Bank Accounts by the holders or makers thereof, (ii) receive, process, and honor and pay any and all prepetition checks, drafts, wires, or electronic funds transfers drawn on the Bank Accounts by the holders or makers thereof to the extent authorized herein, and (iii) charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including, without limitation, returned items that result from ACH transfers, wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

24.  Notwithstanding anything to the contrary in any other order of this Court, the Debtor requests that the Bank be authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires, or electronic funds transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires, or electronic funds transfers are dated before, on, or subsequent to the Petition Date. Pursuant to the relief requested in this Motion, no Bank shall incur, and each is hereby released from, any liability for relying upon Debtor's instruction as to which checks, drafts, wires, or electronic funds transfers should be honored or dishonored or for such Bank's inadvertence in honoring any check, draft, wire, or electronic funds transfer at variance from the

32923654v.1

Debtor's instructions unless such inadvertence constituted gross negligence or willful misconduct on the part of the Bank.

25. By this Motion, the Debtor also seeks authorization to open any new bank accounts, close any existing Bank Accounts, or make such other ordinary course changes as it may deem necessary and appropriate in their sole discretion; *provided* that (a) the opening, closing, or use of any such Bank Account is not prohibited or restricted by the terms of any approved debtor-in-possession financing facility and (b) the Debtor gives notice of the closing of any Bank Accounts or the opening of any new bank accounts within fifteen (15) days thereafter to the U.S. Trustee and the Subchapter V Trustee in this chapter 11 case.

26. To minimize expenses, the Debtor furthers request that they be authorized to continue using their existing Business Forms; *provided*, that once the Debtor's existing check stock has been exhausted, the Debtor shall include, or direct others to include, the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all checks as soon as it is reasonably practicable to do so.

27. If the Debtor is not permitted to maintain and utilize its Bank Accounts and continue to use their existing checks as set forth herein, it would (a) disrupt the ordinary financial affairs and business operations of the Debtor, (b) delay the administration of the Debtor's estate, (c) compromise the Debtor's internal controls and accounting system, and (d) require the Debtor to spend funds unnecessarily to set up new systems and open new accounts and print new checks. As noted above, courts in this District routinely grant the relief requested with respect to these matters. Accordingly, this request should be granted.

32923654v.1

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

28. The Debtor seeks immediate authorization for the relief requested in this Motion. Pursuant to Bankruptcy Rule 6003(b), a bankruptcy court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within the first twenty-one (21) days after the petition date unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons set forth herein and in the First Day Declarations, the Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of its operations and that any delay in granting the relief requested could hinder the Debtor's operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtor's operations at this critical juncture. Accordingly, the Debtor submits that it has satisfied Bankruptcy Rule 6003(b) and therefore respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

29. By this Motion, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause for a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h). For the reasons set forth herein and in the First Day Declarations, the Debtor submits that notice of the relief requested herein is appropriate under the circumstances and that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## Reservation of Rights

30. Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien (or the priority thereof) against the Debtor, (b) a waiver of the Debtor's or any party in interest's rights to subsequently dispute or contest such claim or lien on any grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion, (e) a request or authorization to assume or adopt any agreement, contract, or lease under section 365 of the Bankruptcy Code or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's or any party in interest's rights to subsequently dispute or contest such claim.

## Notice

31. Notice of this Motion will be provided to: (a) the Office of the United States Trustee for Region 13; (b) counsel to DIP Lender; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Eastern District of Missouri; (e) the holders of the twenty (20) largest unsecured claims against the Debtor; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Motion and any order entered hereon will be served in accordance with Local Bankruptcy Rule 9013-3(A)(1). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

32923654v.1

WHEREFORE, the Debtors respectfully request entry of an order, granting the relief requested herein and such other relief as is just and proper.

Dated: July 20, 2020                               LATHROP GPM LLP

                                                   By:   /s/ Wendi Alper-Pressman
                                                         Wendi Alper-Pressman (32906)
                                                         Pierre Laclede Center
                                                         7701 Forsyth Boulevard, Suite 500
                                                         Clayton, Missouri 63105
                                                         Telephone:  314.613.2800
                                                         Telecopier: 314.613.2801

                                                         *Proposed Attorney for Debtor and*
                                                         *Debtor in Possession*
                                                         *Ben F. Blanton Construction, Inc.*

32923654v.1